## ROBERT SANDERS *v.* LEWIS METCALF & others.

### October Term, 1873.

SPECIAL JUDGE—OATH OF OFFICE.—A special judge appointed by the governor is not required to qualify by taking the oath of office before the clerk and master of the court under 1871, 73, 2, and an injunction against his acting as judge upon this ground is unwarranted.

INJUNCTION—SPECIAL JUDGE.—An injunction, granted at the instance of a private citizen, restraining a judge, duly commissioned by the governor of the state, from discharging his judicial functions, is wholly unwarranted.

SAME—ORDER PUNISHING AN OFFICER FOR CONTEMPT.—The judge of any court, proceeding according to law, has authority to control the officers of court and punish them for contempt, and no other judge has any authority to enjoin the execution of the order made for this purpose.

SAME—COMMISSIONERS OF COUNTY COURT.—The chancery court has no authority to enjoin commissioners appointed by the county court to carry out its order for the removal of the county-seat, especially if the county court is not made a party to the suit.

QUERE.—Whether the court of chancery has any jurisdiction, at the suit of an individual, to revise the action of the county court upon the question of the removal of the county seat under the act of 1873, 103, 1.

*W. E. B. Jones*, for complainant.

*A. S. Colyar*, for defendants.

THE CHANCELLOR:—This is an original bill addressed to the Hon. A. S. Marks, Chancellor of Grundy Chancery Court, and comes before me under the act of July 6, 1870, ch. 31 (T. & S. Rev. 4416, *a*), by reason of the incompetency of Chancellor Marks, upon an application to dissolve the injunction granted upon the filing of the bill. Both parties have appeared by counsel and have furnished me with written briefs, declining to make oral arguments. The application is based upon two grounds:

1. The want of equity on the face of the bill.

2. Because the equity of the bill, if any, has been fully met by the answers of the defendants.

The facts to be gathered from the bill are as follows:

Under the act of the legislature, passed on the 21st March, 1873, the County Court of Grundy County, at its July term, 1873, ordered an election to be held to see if the people of that county desired to remove the county-seat from Altamont to Tracy City, and directed the sheriff to open and hold an election at the different precincts, or election grounds, on the 20th September, 1873. The sheriff did, on that day, hold said election, but failed to open the polls in the 8th civil district, " and thereby," says the bill, " deprived twelve or more legal voters of said county, who had assembled at the precinct of said district, from voting in said election." At the October term of said county court, the returns of said election were made to Jno. C. Lockhart, the chairman of said county court, and said votes were counted in open court, and the result declared that " no removal" was carried by a majority of two votes, and proclamation was made, by

order of the court, by the sheriff to that effect, and the minutes regularly signed. The vote as returned was 448 votes for Tracy City and 226 votes for "no removal," and one vote for Altamont. On the next day, being Tuesday, the county court, "by the fraudulent misrepresentations and influence of A. S. Colyar" (who is no party to the suit), were induced to, and did pretend to re-count said votes, and to reject four votes counted for no removal as illegal, on parol testimony of one or two witnesses in opposition to the certified returns, and made the result 448 votes for Tracy City, and 222 votes for no removal, and one for Altamont. Said court asserted that two-thirds of the votes cast were in favor of Tracy City, and then ordered the removal of the county-seat of Grundy county from Altamont to Tracy City. It further ordered the clerk of said county court to remove his books and the papers of his office to Tracy City. The court also appointed the defendants, John C. Lockhart, Jas. E. Ball, Ferrill Lawton, William Minton and John Tipton commissioners to select a suitable place for a courthouse, and a place for holding the courts and for the public offices of the county, and to cause the officers to remove the books and papers of the respective county offices of said county to Tracy City. The complainant, Sanders, and one J. M. Bouldin, who is no party to this suit, appeared in open court before the said county court, and showed that they were citizens and taxpayers of Grundy county, and prayed an appeal from "both of which orders," meaning, it is to be presumed, the order that two-thirds of the votes cast were in favor of Tarcy City, and the order appointing commissioners to effect the removal of the county offices. The appeal thus made was refused by the court. Afterwards, on the 11th of October, 1873, complainant and said Bouldin presented to the Hon. J. C. Guild, one of the judges of the state, their petition against the county court of Grundy county for writs of *certiorari* and *supersedeas* to take up to the circuit court for Grundy county the proceedings of the county court removing the county-seat of Grundy county

from Altamont to Tracy City, and superseding the action of said court entirely in said matter. These writs of *certiorari* and *supersedeas* were awarded them, upon their giving bond and security for the prosecution thereof, and on the 15th of October, 1873, they filed said petition in the office of the clerk of the circuit court of Grundy county, and gave the bond and security, and writs of *certiorari* and *supersedeas* were issued, and were on same day placed in the hands of the sheriff of Grundy county.

The complainant was appointed, in 1870, the Clerk and Master of the Chancery Court of Grundy County, and duly qualified as such, and was inducted into office, and is still the legal Clerk and Master. The Hon. A. S. Marks, who is Chancellor of the Fourth Chancery District, in which is included Grundy county, certified to His Ex. John C. Brown, governor of the state, his incompetency to try many causes in the said Grundy Chancery Court, and the governor, thereupon, commissioned the defendant, Lewis Metcalf, to open and hold said court on the first Wednesday after the second Monday in October, 1873, which would be the 15th day of said month. Under this commission, the said Metcalf went to Tracy City and took the oath of office before a justice of the peace, and proceeded to discharge the duties of Chancellor. On the 15th of October, 1873, he ordered complainant to appear before him, and bring his books and papers to Tracy City, and appointed the defendant, J. B. Colyar, clerk and master *pro tempore*. On the same or the next day (the date is blurred in the copy of the bill before me), said Metcalf, under his own proper hand, issued an attachment to the sheriff of Grundy county, commanding him to arrest complainant and bring him before him (said Metcalf), and also to take the books, records and papers belonging to the office of clerk and master of said Chancery Court of Grundy County. Under this authority, the sheriff, with others, on the 17th of October, 1873, arrested the complainant, and took from him a large number of books and records and files of papers belonging to said office, and are endeavoring to get the bal-

ance of said books, records and papers. On the 18th of October, 1873, said Metcalf, acting as special judge, proceeded to try complainant, and fined him fifty dollars and all costs of the proceedings, and ordered him into the custody of the sheriff until he produced and delivered up the remaining books, records and papers of the office, to John B. Colyar at Tracy City, and thus the matter now stands.

On the 15th of October, 1873, several of the attorneys practicing in the Grundy Chancery Court assembled at Altamont, in the court-house, and no regular or special judge attending to hold said court, complainant, according to law, opened and held an election for special judge, when B. J. Hill was elected such special judge by the practicing solicitors and attorneys of said court, was sworn and inducted into office, and opened and held said court, and adjourned said court on the same day to a special term to be held in the court-house in Altamont, on the 3d Monday in January, 1874.

These are the *facts* as set forth in the bill, the residue of the allegations consisting of inferences and deductions and some qualifying epithets. The statements of the answers are in substantial accord with those of the bill upon the facts, except in relation to what took place in the county court upon the return of the votes of the election for the removal of the county-seat. The answer of Lockhart, the chairman of the county court, which is adopted by the other defendants is, in substance, that when the returns were made by the sheriff to the court, he, as chairman, ordered the sheriff and clerk of the court to retire from the court-room and count the votes and make the calculation of the number of votes cast for removal, and the number for no removal. That the sheriff and clerk returned and reported that there was a majority of two votes for "no removal," or rather that "removal" had failed to receive a two-thirds majority of all the qualified voters of the county by two votes. That immediately A. S. Colyar, and other attorneys representing the petitioners for removal, objected to the report, and said that

the sheriff and clerk had counted several votes for "no removal," when the returns showed that the word "Altamont" was written on the tickets, instead of the words "no removal." Some members of the court also objected at the time that it was not the duty of the chairman to declare the result, but of the court, but respondent Lockhart said he believed the act of the legislature left the whole matter to the chairman, and he ordered the sheriff to make proclamation, which was done. The argument still continued after the proclamation, and respondent, after reading the act over carefully and further consideration, concluded that he had been too hasty, and that it was left to the court and not to the chairman to determine the matter, and he thereupon announced to the court that he would leave the whole matter to the court. At this time not an order had been made on the minutes, and the court forthwith, on the same day, proceeded to count the votes, and hearing the proof, the county court decided that there were 448 votes for Tracy City and 222 votes for no removal, and this decision was made by the court with but one dissenting voice. This was all on the same day, and the minutes were not signed by respondent until the entries had been made in conformity with the orders of the court as set out in the bill, and until just before court adjourned two days afterwards.

The only marked differences between the two accounts of these proceedings are, that the complainant states the first proclamation was made by the court, after the votes were counted in open court, whereas the defendants say it was made by the chairman against the protest of some members of the court; and that the complainant says the reconsideration was the next day, and brought about "by the fraudulent representations" of a person who is no party to this suit; whereas the defendants say it was on the same day, and upon the voluntary action of the chairman himself. Both sides agree that the matter was reconsidered, and that the county court did declare that the removal to Tracy City was carried by a two-thirds vote, and did order the removal and appoint

commissioners to carry the order into practical execution. The difference, therefore, is in the details which led to the result, not in the result actually reached.

This bill is filed against Lewis Metcalf, Special Judge under the commission of the Governor; T. T. Levan, the sheriff of Grundy county, and Joseph Clay and Frank Roddy, special deputies of the sheriff in executing the attachment for the complainant; John B. Colyar, the clerk and master pro. tem., appointed by Metcalf; John C. Lockhart, William Minton, John Tipton, Ferrell Lawton and James E. Ball, the commissioners appointed by the county court to carry out the order of removal of the county-seat. The prayer of the bill is that an injunction issue restraining said Metcalf from acting as special judge until sworn in according to law (which complainant insists can only be done by him as clerk and master), and from holding said Grundy Chancery Court at Tracy City, and from issuing any writs of attachment, or making orders, or issuing any writs to arrest complainant because he will not appear and act as clerk and master at Tracy City, and compelling him to remove his official records and books and papers to Tracy City; also enjoining any execution from issuing on said $50 fine and costs; also enjoining defendants Colyar, Levan, Clay, Roddy, or any officer of Grundy county, from taking, holding, or interfering with the complainant, his books and papers of office; also enjoining said commissioners, and said Lockhart, as chairman, from doing anything further towards the removal of said county-seat, or the compelling of the removal of the books, papers, and records of said county from Altamont to Tracy City; and that, on final hearing, said injunction be made perpetual, "and said illegal proceedings be declared void, and justice be done, and for full, complete and general relief."

This bill was sworn to, and a fiat obtained upon it in the words and figures following, viz:

" State of Tennessee :—To the Master in Chancery, at Altamont, for Grundy county, Tennessee—File this bill, and issue process as prayed, when the complainant enters into

bond, with security, as required by law. Take the injunction bond in the sum of five thousand dollars.

JOHN B. HOYLE,

Judge of the 4th Circuit, in the State of Tennessee."

The fiat is not dated, but the bond executed under it bears date the 22d of October, 1873. The injunction itself is not before me, but, it is said, was issued by the complainant himself as clerk and master.

The injunction under consideration, it will be noticed, may be divided into three branches:

1. It restrains the defendant, Metcalf, from acting as Special Judge until sworn according to law; from holding the Grundy Chancery Court at Tracy City; from issuing any writs of attachment, or making orders, or issuing any writs to arrest complainant because he will not appear and act as Clerk and Master at Tracy City, and compelling him to remove his records, etc., to that city.

2. It enjoins the issuance of execution for the $50 and costs adjudged against complainant for contempt of court, and enjoins Colyar, Levan, etc., or any officer of Grundy county, from taking, holding, or interfering with complainant, his books and papers of office.

3. It enjoins the commissioners appointed by the county court from doing anything further towards the removal of the county-seat, or the compelling the records of said county to be removed to Tracy City.

The reason assigned for enjoining the defendant, Metcalf, from acting as special judge, is, that he is not authorized to act as judge until sworn in by the complainant in his chasacter of Clerk and Master. This assumption is based both in the bill and in the argument of complainant's counsel, upon § 3,930 of the Code. Upon turning to that section it will be found only to provide for the compensation of Special Judges. The reference intended is to the act of Jan. 28, 1871, ch. 73, § 2, which is no part of the Code, but has been inserted in Thompson and Stegers revisal under §§ 3,930 a to 3,930 e for the convenience of reference. It is

obvious that the provisions of § 2 of that act, prescribing the oath to be taken and that it shall be administered by the clerk and master, are intended for the special judge elected by the members of the bar at the election to be held by the clerk and master under that act. As a matter of convenience, the oath to be taken and the mode of administering it in the particular case are modified to suit the exigency. There was no intention to change the general law, which requires a different oath for judicial officers and before a different functionary. Code, § 310 and § 752.

Besides, the provision for taking the oath is merely directory, and there cannot be a doubt that even a special judge elected by the bar might, if necessary or convenient, take the oath of office under the general law. Or, for that matter, act without taking the oath at all, so far as the validity of his orders and decrees are concerned; the only penalty being the pecuniary one fixed by the Code, § 311. The complainant is, therefore, clearly mistaken in supposing that the defendant, Metcalf, was required, as a preliminary to the discharge of his judicial duties, to take the oath before him. That part of the injunction which seeks to restrain him from discharging those duties until he shall have taken the oath of office before the complainant, is, consequently, clearly unauthorized.

The residue of the first branch of the injunction seeks to restrain the defendant, Metcalf, from making particular orders, which are specified, in future, when he shall, if ever, undertake to act under his commission. I know of no law to authorize such an injunction, It would be a singular anomaly, if an individual citizen could obtain an injunction to restrain a regular commissioned judge from discharging his functions in any case brought before him, in which that citizen's interests might be involved, according to his best judgment at the time the case is heard. That the judge of another court should have the power to issue such an injunction cannot be conceded for a moment. Each judge is supreme in his own sphere, and cannot be restrained in the

discharge of his functions by the fiat of a brother judge. The suitors of his court may be restrained in proper cases from proceeding before him, but no such process can run against him. The law takes for granted that he will "administer justice without respect to persons, and impartially discharge all the duties incumbent upon him as a judge, to the best of his skill and ability."

The injunction, therefore, so far as it is directed against the defendant, Metcalf, is without authority, and must be dissolved.

The second branch of the injunction is to enjoin the orders and decrees made by the defendant, Metcalf, when acting as special judge, against the defendant for contempt of court, and as regulatory of the records, books, and papers of the clerk and master's office, and of the conduct of the clerk and master himself. Of course, there can be no doubt of the jurisdiction of the presiding judge to control the conduct of the officers of the court, and to punish them for a disobedience of its orders. Such power is absolutely essential to the exercise of judicial authority, and inherent in every court. It is, moreover, expressly conferred in this state by the Code, section 4,099, subsec. 4, and section 4,106, subsecs. 2 and 3. So vital is this power to the respectability, safety and existence of the judicial department of the government, that it has been held that the judgment of a court in punishment for contempt is not subject to revision by appeal, writ of error, *certiorari*, or otherwise, although such judgment may be void on its face. *Martin's case*, 5 Yer. 456; *Malone's case*, 3 Sneed, 413; *State* v. *Galloway*, 5 Cold. 326. The remedy to test the legality of the imprisonment is by writ of *habeas corpus*. 5 Cold. 326. And, no doubt, the validity of a judgment for a fine may be tested by action against the officer who undertakes to collect it. But to concede that another judge may enjoin such a judgment, is to concede not merely the power of revision, but that a judgment may be attacked by a new suit instituted for the purpose, even when the court has jurisdiction both of the subject-

matter and the person, a position in conflict with every principle of law, when the matter of attack is only what was before the court when the judgment was rendered, and when the party making the attack admits that he had the opportunity to make defense.

The part of the injunction which restrains the execution of the judgment made upon the proceeding for contempt cannot be sustained, and must be dissolved.

The third branch of the injunction which has been granted in this case, is directed against John C. Lockhart and others, commissioners appointed by the county court to carry out its order for the removal of the county-seat, and seeks to restrain them from discharging the duties devolved upon them by order of that court. If they are the Commissioners of the County Court, acting under its orders, made as a court, this court has no power to interfere with them. The application should be to the circuit court, which is authorized to exercise a supervisory control over inferior tribunals, not to this court. Besides, the complainant has not made the necessary parties to contest the validity of their appointment, or of the objects for which they were appointed. The removal of the county-seat of a county is a matter in which all the citizens of the county are interested, and their proper representative is the county court. An injunction upon these defendants as individuals would be nugatory, for the county court might immediately appoint other commissioners to execute their orders, and so on, *ad infinitum*. The complainant is not entitled to the process of injunction until he brings before the court all the necessary parties to enable the court to decide upon the real question at issue. The injunction, so far as these defendants are concerned, must also be dissolved.

These conclusions are arrived at without considering the anomaly of an injunction issued by a person as clerk and master, who is also the party in whose favor the injunction issues, and who is, as his bill shows, in the custody of the sheriff upon a judgment of the court of which he is cl: .k.

I am bound to assume the validity of the judgment, the ground upon which the authority of the special judge is questioned being clearly untenable, and there not being before me the necessary parties to test the validity of the removal of the county-seat to Tracy City.

It may not be improper to add that I am clearly of opinion that the court of chancery has no jurisdiction, at the suit of an individual, to revise the judgment of the county court upon the question of the removal of the county-seat. The 7th section of the act of 1873, ch. 103, is in these words: "That the sheriff shall make his returns [of the election] to the judge or chairman of the county court, and at the next quarterly session after the election the vote cast shall be counted and the result declared, and if the proposition to remove the county-seat receive the requisite number of votes, then the county court shall proceed to make all necessary provisions for the removal." It is clear to my mind that the legislature has, by this language, entrusted to the county court at its quarterly session, as the proper organ of the county, as a *quasi* corporation, the right to count the votes and declare the result. The bill admits that the court did, at the quarterly session at which the vote was counted, though after having at first come to a different conclusion, declare that the removal had been carried, and did proceed to make provision for the removal. This is precisely the same as if the legislature had ordered the election, and, upon the returns made to it, had declared the result to be in favor of removal, and had passed an act to that effect. As soon as the result was declared, the county-seat was *eo instanti* changed as if it had been done by an act of the legislature. The county court were commissioners appointed by the legislature to make the removal by declaring the result of the election, and their act, not being judicial but legislative, is conclusive, and the courts have no power to enquire into its validity. The remedy is with the legislature. *Ford* v. *Farmer*, 9 Hum. 182; *Bridgenor* v. *Rodgers*, 1 Cold. 261; and see *People* v. *Collins*, 19 Wend. 56.

And even if the act were in its nature judicial, it falls within that large class of cases where the decision is final, and not subject to revision by any other judicial tribunal: Such as the survey of a town by commissioners under legislative act to determine the boundaries of lots. *McKean* v. *Tait,* 1 Tenn. 199. And the adjudication of commissioners on pre-emption claims. *Barnet* v. *Russel,* 2 Tenn. 10. And the acts of a surveyor under our entry laws, even where he plainly violates his duty, 2 Tenn. 23, 305, 340. And officers authorized to issue grants, 1 Tenn. 230; 4 Hum. 203. And the register of the elective franchise. 6 Cold. 233.

In all such cases the act is conclusive as to individuals. The government alone can dispute its validity. 3 Hawks, 520; 1 Dev. & Bat. 306; 5 Wheat. 271; 3 Hum. 305, 311.

At any rate, whatever may be the revising power of other courts in the premises, which must be left to them to determine, the court of chancery has no jurisdiction at the suit of a citizen to enjoin the county court from exercising the duty expressly imposed upon it by the legislature.

The motion of the defendants must be sustained, and the injunction dissolved.